IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-245-BO

| | |
|---|---|
| LA SONDA R. STASINOPOLOUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     O R D E R |
| | ) |
| L.M. SANDLER & SONS, INC., | ) |
| CHESAPEAKE HOMES OF NORTH | ) |
| CAROLINA, INC., TODAY HOMES | ) |
| REALTY, L.L.C., JOHN BARNES, JIM | ) |
| SWINGLE, and KERRI WOODWARD, | ) |
| | ) |
| Defendants. | ) |

This cause comes before the Court on defendants' partial motion to dismiss for failure to state a claim. Plaintiff has responded, defendants have replied, and the motion is ripe for ruling. For the reasons that follow, defendants' motion is granted in part.

## BACKGROUND

Plaintiff filed this action in the Superior Court of Wake County, North Carolina, asserting gender and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as well as state law claims for wrongful discharge in violation of North Carolina public policy and tortious interference with contract. Defendants removed the action to this Court pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and thereafter filed a partial motion to dismiss. Plaintiff then filed an amended complaint, adding a claim for ratification. Defendants then moved to partially dismiss the amended complaint. In their partial motion to dismiss the amended complaint, defendants contend that Counts II, III, and IV of plaintiff's amended complaint alleging state law claims for wrongful

discharge in violation of public policy, tortious interference with contract, and ratification fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Defendants are engaged in real estate development and have operations in Virginia, North Carolina, and South Carolina. [DE 13] Amd. Cmpl. ¶¶ 2-5. Plaintiff began her employment with defendants on January 30, 2017, with the job title of Lead Agent & Broker in Charge. *Id.* ¶¶ 21, 25. From her time of hire through June 5, 2017, plaintiff functioned in all material respects as defendants' Raleigh Sales and Marketing Manager and was referred to as such by defendants. *Id.* ¶¶ 26-31; 36. Plaintiff's job performance was more than satisfactory and she was not given any oral or written counseling about her performance. *Id.* ¶ 37-38. Plaintiff informed defendant Woodward of her pregnancy on May 5, 2017; less than two weeks later, defendants contacted another individual about taking the Raleigh Sales and Marketing Manager position. *Id.* ¶¶ 40, 45.

Plaintiff alleges that on June 5, 2017, defendant Woodward informed her that defendants had hired Jim Swingle, a male, as the new Raleigh Sales and Marketing Manager, resulting in an immediate demotion for plaintiff, who had been serving in that position since her hire. *Id.* ¶¶ 45-48. Plaintiff alleges that she suffered physical and emotional distress following her demotion, which she contends caused or significantly contributed to the loss of her pregnancy. *Id.* ¶¶ 57-61. After taking leave, plaintiff returned to work on July 24, 2017. *Id.* ¶¶ 64-65. Plaintiff was assigned minimal responsibilities upon her return, and was given a written "counseling" on July 31, 2017, based on her behavior during a meeting, which plaintiff alleges was entirely appropriate. *Id.* ¶¶ 67-68. Plaintiff's employment with defendant was terminated on August 2, 2017, without reason. *Id.* ¶ 69.

2

DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Plaintiff's filing of an amended complaint renders the original complaint of no legal effect, and defendants' first partial motion to dismiss is therefore denied as moot. *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001).

A. North Carolina wrongful discharge.

Defendants' motion to dismiss plaintiff's North Carolina wrongful discharge claim is denied. The public policy of North Carolina, as expressed in the North Carolina Equal Employment Practices Act (NCEEPA), is to "protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . sex . . . by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a). Under North Carolina law, an at-will employee generally may not raise a

wrongful discharge claim. *Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 79 (2010). There is a public policy exception to this general rule, however, where an employee's termination is contrary to public policy or prohibited by statute. *Kurtzman v. Applied Analytical Indus.*, 347 N.C. 329, 331 (1997).[1]

The Court is aware of no North Carolina court which has held that North Carolina's public policy prohibition on discrimination in employment based on sex encompasses a claim of pregnancy discrimination. *See, e.g., Sweeney v. Marc Glob., Inc.*, No. CIV.3:06CV182, 2008 WL 313618, at *11 (W.D.N.C. Feb. 4, 2008). Although this Court held in 1998 that, in the absence of an express determination by the state courts, it would decline to expand upon North Carolina's conception of its remedies to determine that the public policy prohibiting sex discrimination would also prohibit pregnancy discrimination, *McDaniels v. Hollowell*, P.C., No. 2:97-CV-27-BO(3), 1998 WL 34261668, at *2, (E.D.N.C. Jan. 21, 1998), the passage of time counsels against such a holding today.

Title VII was amended in 1978 to expressly include pregnancy in its definition of sex for the purposes of defining sex discrimination in employment. *See* Pub. L. 95-555, 92 Stat 2076 (1978); *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1343 (2015); *AT & T Corp. v. Hulteen*, 556 U.S. 701, 719 (2009). North Carolina's public policy against employment discrimination was enacted in 1977, prior to the passage of the Pregnancy Discrimination Act, but in passing the NCEEPA, the state legislature's purpose was the same as Congress' in enacting Title VII – "the elimination of discriminatory practices in employment." *N. Carolina Dep't of Correction v. Gibson*, 308 N.C. 131, 141 (1983). To that end, the North Carolina

---

[1] Although courts have not recognized a private right of action under the NCEEPA, the NCEEPA does support a claim for common law wrongful discharge in violation of public policy. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000).

4

Supreme Court expressly adopted Title VII's "evidentiary standards *and principals of law* insofar as they are not in conflict with [North Carolina]'s statutes and case law." *Id.* (emphasis added).

Defendants correctly argue that no federal court has yet explicitly found that pregnancy discrimination in employment is a violation of the NCEEPA, but several recent federal court decisions have opined that North Carolina *would* recognize such a claim, or at a minimum have declined to dismiss such a claim at the Rule 12(b)(6) stage. *See, e.g., Simpson v. Amylin Pharm., Inc.*, 977 F. Supp. 2d 552, 565–66 (W.D.N.C. 2013); *Leonard v. Wake Forest Univ.*, 877 F. Supp. 2d 369, 374 (M.D.N.C. 2012); *Bray v. Town of Wake Forest*, No. 5:14-CV-276-FL, 2015 WL 1534515, at *12 (E.D.N.C. Apr. 6, 2015); *Sweeney v. Marc Glob., Inc.*, No. CIV. 3:06CV182, 2008 WL 313618, at *11 (W.D.N.C. Feb. 4, 2008). While defendants also correctly argue that the North Carolina General Assembly has had ample opportunity to amend the definition of "sex" to include pregnancy and related conditions and has failed to do so, nor has the General Assembly taken it upon itself to distinguish North Carolina's public policy from Title VII *as amended*.

The Court today is unaware of any North Carolina state statute or case which would conflict with recognizing a claim for pregnancy discrimination in employment in violation of the NCEEPA. Counseled by more recent interpretations by the federal courts, the Court will allow plaintiff's common law wrongful discharge claim to proceed.

B. Tortious interference with contract.

Plaintiff's tortious interference with contract claim has been alleged against the individual defendants, Barnes, Woodward, and Swingle. Plaintiff alleges that the individual defendants, in demoting and terminating plaintiff, promulgated false information about plaintiff's

5

position and performance and were motivated by their malicious and wrongful desire to remove plaintiff from her position because of her pregnancy and gender. To state a claim for tortious interference with contract, a plaintiff must allege:

> (1) a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant acts without justification; and (5) the defendant's conduct causes actual pecuniary harm to the plaintiffs.

*Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 604 (2007). A non-outsider to the contract may be determined to have tortiously interfered with a contract where the non-outsider acted maliciously and without legal justification. *RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 24 F. Supp. 2d 515, 520 (M.D.N.C. 1998). "A non-outsider is a party who, though not a party to the breached contract, nonetheless has a legitimate interest in the subject matter of the contract." *Id.* "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Varner v. Bryan*, 113 N.C. App. 697, 702 (1994).

As plaintiff's complaint admits, the individual defendants she alleges tortiously interfered with her contract were employees of the corporate defendants and members of her management chain. Amd. Cmpl. ¶¶ 7-9. As corporate employees and managers, their conduct is "presumed to have been done in the interest of the corporation." *Embree Const. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498 (1992) (quotation and citation omitted). Therefore, in order to sustain a claim against these non-outsider defendant for tortious interference, the "complaint must admit of no motive for interference other than malice." *Pinewood Homes*, 184 N.C. App. at 610. Moreover, a claim of insider tortious interference must be supported by allegation that personal rather than corporate interests motivated malicious conduct. *Embree Const. Grp., Inc. v. Rafcor, Inc.*, 330

6

N.C. 487, 499 (1992); *see also RDLG, LLC v. RPM Grp., LLC*, No. 1:10CV204, 2010 WL 6594916, at *9 (W.D.N.C. Dec. 21, 2010), *report and recommendation adopted*, No. 1:10CV204, 2011 WL 1694616 (W.D.N.C. May 3, 2011).

While plaintiff has alleged that the individual defendants acted without legal justification and with malice in demoting and subsequently terminating her employment, she has failed to allege any specific facts which would support a finding that the individual defendants acted in furtherance of personal rather than corporate interests. *Compare Barker v. Kimberly-Clark Corp.*, 136 N.C. App. 455, 463 (2000) (complaint alleged defendant managers acted out of personal hostility and ill-will toward plaintiff and created false and defamatory accusations with intent cause termination of her employment). That these defendants were a part of her management chain further weakens her tortious interference theory of relief, because, as her managers, the individual defendants had a "legitimate professional interest in the plaintiff's performance of [her] duties." *Privette v. Univ. of N. Carolina at Chapel Hill*, 96 N.C. App. 124, 134 (1989). The existence of such an interest provides an additional motive for interference other than malice, which defeats a claim for tortious interference against a non-outsider. *Id.* For all of these reasons, plaintiff's tortious interference with contract claim is properly dismissed.

C. Ratification.

Plaintiff has alleged a claim for ratification against the employer defendants, alleging that the employer defendants were aware of their senior managers' conduct and failed to correct the actions, thus ratifying their conduct. At bottom, plaintiff alleges that the corporate defendants ratified the tortious interference with her contract conducted by the individual defendants. Because the Court has found that dismissal of the tortious interference claim is proper, the claim for ratification must be dismissed as well.

## CONCLUSION

For the foregoing reasons, defendants' partial motion to dismiss the original complaint [DE 11] is DENIED AS MOOT. Defendants' partial motion to dismiss the amended complaint [DE 18] is GRANTED IN PART and DENIED IN PART. Plaintiff's claims for tortious interference with contract and ratification are DISMISSED. Plaintiff's remaining claims against defendants may proceed.

SO ORDERED, this 19 day of November, 2018.

_____
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE